UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Donna Jung,

    Plaintiff,

v.

Commissioner of Social Security,

    Defendant.

Case Action No.: 1:11-cv-34

Judge Michael R. Barrett

## ORDER

This action is a Social Security appeal brought under 42 U.S.C. § 405(g). Before the Court is Magistrate Judge Karen L. Litkovitz's February 2, 2012, Report and Recommendation ("Report") (Doc. 22).[1] The Report recommends that Defendant's decision to deny Plaintiff's application for disability insurance benefits ("DIB") be affirmed as supported by substantial evidence. (Doc. 22, 39.)

The parties were given proper notice under Rule 72(b) of the Federal Rules of Civil Procedure including notice that the parties would waive further appeal if they failed to file objections to the Report in a timely manner. (Doc. 22, 40); *see United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). Plaintiff filed timely Objections to the Report (Doc. 23).

For the reasons stated below, the Court overrules Plaintiff's Objections, and the Report is ADOPTED. Accordingly, the Commissioner's decision is AFFIRMED.

---

[1] Except for the administrative record (which is cited as "Tr.") all Court document citations are to CM/ECF Docket Entry numbers.

I.      **Background**

Plaintiff Donna Jung filed her current application for DIB under the Social Security Act alleging a disability due to depression and back, neck, knee, shoulder, and hand problems. (Doc. 1 ¶ 2; Doc. 22, 1; Tr. 18.) After Plaintiff's application was denied initially and upon reconsideration, she appeared for an evidentiary hearing before an Administrative Law Judge ("ALJ"). (Doc. 1 ¶ 2; Doc. 22, 1.) On October 14, 2009, ALJ Robert W. Flynn denied Plaintiff's application in a written decision. (Doc. 1 ¶ 2; Tr. 10–22.) The ALJ concluded that Plaintiff does not have a disability within the meaning of the Social Security Act. (Tr. 22.) The Appeals Council of the Social Security Administration denied Plaintiff's request for review, and therefore, the ALJ's decision stands as Defendant's final decision. (Doc. 1 ¶ 3; Doc. 22, 2.)

The Report and the ALJ's decision accurately detail the remainder of the facts and procedural history of this case. (*See* Doc. 22; Tr. 10–22.) There is no need to repeat them here. Accordingly, the Report's statement of facts and procedural history are adopted in full.

The Report recommends that Defendant's finding of non-disability should be affirmed. (Doc. 22, 39.) In reaching this decision, the Report analyzes Plaintiff's argument that the ALJ improperly weighed the opinion of Plaintiff's treating psychiatrist, Dr. Renner. (Doc. 22, 18; Doc. 15, 11–12.) The Report concludes that the ALJ's decision to give "little weight" to Dr. Renner's opinions is supported by substantial evidence because Dr. Renner's opinions about the severity of Plaintiff's impairments were inconsistent with her treatment notes. (Doc. 22, 21.) The Report and the ALJ both found inconsistencies between Dr. Renner's treatment notes and Plaintiff's

testimony and inconsistencies between Dr. Renner's opinions and the opinions of Dr. Chiappone, a consultative examiner, and Dr. Meyer, a non-examining state agency psychologist. (Doc. 22, 22, 23.) In sum, the Report concluded that the ALJ's decision to discount Dr. Renner's opinions is supported by substantial evidence and complies with agency regulations because he gave "good reasons" for discounting Dr. Renner's opinions by citing their internal and external inconsistencies and contradictions. (Doc. 22, 25.)

Plaintiff disputes this conclusion by raising one objection to the Report's recommendation. Plaintiff maintains that the ALJ erred in his assessment of the opinion of Plaintiff's treating psychiatrist, Dr. Renner, in violation of 20 C.F.R. § 404.1527(d) and Social Security Ruling 96-2p. (Doc. 23, 1.) Plaintiff's specific arguments in support of this objection are addressed below.

## II. Analysis

### A. Standard of Review

When objections are received to a magistrate judge's report and recommendation on a dispositive matter, the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1). General objections are insufficient to preserve issues for review; "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

The Court's review of the Social Security Commissioner's decision is limited to determining whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 521 (6th Cir. 2008) (internal quotations omitted).

The substantial evidence standard presupposes that "there is a zone of choice within which the [ALJ] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal citations omitted) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). This "zone of choice" includes resolving conflicts in the evidence and deciding questions of credibility. *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987). Consequently, this Court should defer heavily to such findings. *See Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994). If substantial evidence supports the ALJ's finding of non-disability, that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky*, 35 F.3d at 1035 (citing *Mullen*, 800 F.2d at 545). However, even where there is substantial evidence, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478

F.3d 742, 746 (6th Cir. 2007)).

### B. Plaintiff's Objection

Plaintiff's sole objection contends that the ALJ erred in his assessment of the opinion of Plaintiff's treating physician in violation of 20 C.F.R. § 404.1527(d) and Social Security Ruling 96-2p. More specifically, Plaintiff challenges the Report's conclusion that the ALJ did not err in weighing the medical opinion of Dr. Renner, Plaintiff's treating psychiatrist. (Doc. 23, 1.)

An ALJ is not bound by a treating physician's conclusory statement that the claimant is "disabled." *Miller v. Sec'y of Health & Human Servs.*, 843 F.2d 221, 224 (6th Cir. 1988) ("The determination of disability is the prerogative of the Secretary and a physician's opinion is not conclusive of the ultimate fact of disability.") However, an ALJ must give the opinion of a treating source controlling weight if the opinion is, "'well-supported by medically acceptable clinical and laboratory diagnostic techniques,'" and "'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). On a claim for social security disability benefits, medical opinions and diagnoses of treating physicians must be given "substantial deference—and, if the opinion is uncontradicted, complete deference." *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983)). The regulations require "good reasons" for any determination of weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2). If an ALJ decides to discount the treating physician's medical opinion, the ALJ must provide, "specific reasons for the weight given to the treating source's medical opinion, supported by the

evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (citing Soc. Sec. Rul. 96-2p).

Plaintiff's overall theme here is that Dr. Renner's medical opinions are consistent with her treatment notes. (*See* Doc. 23.) Plaintiff presents several arguments going to this point. The Court endeavors to address each of them thoroughly and specifically.

### 1. Dr. Renner's April 27, 2007, Opinions

Plaintiff first takes issue with the Report's discussion of Dr. Renner's April 27, 2007, treatment notes. Plaintiff maintains that Dr. Renner saw her on April 27, 2007, "solely for the purpose of completing disability forms." (Doc. 23, 2.) Accordingly, where Dr. Renner's treatment notes describe Plaintiff's condition as "stable" and requiring no change in medication, this is not an inconsistency with other evidence in the record given that she was not seen for medication management that day. (Doc. 23, 2.) Plaintiff further points out that a patient can be stable and disabled at the same time. (Doc. 23, 2) (citing *Hopkins v. Comm'r of Soc. Sec.*, No. 1:07-cv-964, 2009 WL 1360222, at *17 (S.D. Ohio May 14, 2009)). In essence, Plaintiff is arguing that the extreme limitations opined by Dr. Renner on April 27, 2007, were consistent with the progress notes from that same day. (Doc. 23, 2.)

Dr. Renner completed two evaluations on April 27, 2007: a Mental RFC (Tr. 472–77) and a Listing 12.04 form (Tr. 478–84). The Mental RFC evaluation indicated a diagnosis of chronic recurrent major depressive disorder. Dr. Renner assigned Plaintiff a GAF score of 45. Dr. Renner further opined that Plaintiff was unable to meet

competitive standards in the ability to perform at a consistent pace without an unreasonable number and length of rest periods, complete a normal workday or work week without interruptions, and unable to deal with normal work stress. The evaluation also stated that Plaintiff had no ability to deal with the stress of semi-skilled and skilled work, and Dr. Renner found extreme restrictions of daily activities, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. 103, 182–83, Tr. 472–77.) The Listing 12.04 form opined that Plaintiff met Listing 12.04 due to her chronic recurrent major depressive disorder. (Doc. 103, 183, 478–84.) In contrast, Dr. Renner's April 27, 2007, progress notes (Tr. 533–34) are very limited. The notes only state that there was no significant change in Plaintiff's condition from the last visit and no change in medication or treatment was needed. (Tr. 533–34; Doc. 22, 9.) Other than that, the notes express no medical opinions. (*See* Tr. 533–34.) But even so, the treatment notes are in fact inconsistent with Dr. Renner's evaluations. The evaluation states that one of Plaintiff's medications is "being changed due to side effects." (Tr. 472.) In opposition to this, the treatment notes state Plaintiff's current medications are to be continued. (Tr. 534.) This is an inconsistency.

Regardless, given the high level of detail in the April 27 Mental RFC and Listing 12.04 form, and the paucity of detail in the April 27 treatment notes (*compare* Tr. 472–84, *with* Tr. 533–34), the Court is willing to assume for argument's sake that these sources are not inconsistent. But this conclusion has no bearing on the Report's overall recommendation. The Report's mention of the inconsistency between the different April 27 documents is insignificant as compared to the other inconsistencies in the record. A portion of the Report's analysis of this issue states as follows:

7

Dr. Renner's treatment notes indicated that plaintiff was doing well in July and October 2006. *See* Tr. 388-90 (in July 2006 Dr. Renner observed that plaintiff was cooperative, and had a "bright affect," a "pretty good" mood, intact cognition, some insight and judgment, and normal thought processes); Tr. 386-87 (plaintiff's mood had not changed in October 2006). Yet, Dr. Renner's December 2006 evaluation form reflected symptoms that were not included in her July or October 2006 treatment notes and included an opinion that plaintiff was unable to work due to major depression, chronic stress, and psychological and physical disorders. (Tr. 426). The ALJ also noted inconsistencies between the April 27, 2007 treatment notes, which indicate that plaintiff was stable and required no change in medication (Tr. 533-34) and evaluation forms completed by Dr. Renner that same day in which she opined that plaintiff had extreme functional limitations that precluded her ability to work, was hostile and belligerent, and experienced negative side effects from medication. (Tr. 472-76). Dr. Renner also opined that plaintiff has marked difficulties with activities such as paying bills (Tr. 627), but then opined that plaintiff was capable of managing her own benefits. (Tr. 477). Dr. Renner's May 2007 evaluation described plaintiff as unable to get out of bed due to severe depression and being prone to crying and anger spells (Tr. 486, 488), while August 2007 treatment notes indicate that plaintiff's affect was subtly irritable, demanding, and entitled as usual. (Tr. 525-26). In November 2008, Dr. Renner noted that plaintiff had "serious psych medication side effects" (Tr. 623), but 2008 and 2009 treatment notes indicate that plaintiff was doing well on medication and had no side effects. *See* Tr. 513, 516 (in June and July 2008 plaintiff declined additional counseling); Tr. 517 (plaintiff reported she was stable on her medication in April 2008); Tr. 519 (in January 2008 plaintiff reported "no problems with her medications"); Tr. 636 (in March 2009 plaintiff reported that her medications were working well for her and she felt stable and was noted as being very pleasant); Tr. 666-71 (May, July, and August 2009 treatment notes demonstrate that plaintiff was stable on her medications and reported no side effects). Further, in June 2008 plaintiff reported that her depression symptoms had diminished with her medication and that she was "living with more of a sense of peace and confidence." (Tr. 516).

The ALJ also cited to the inconsistencies between Dr. Renner's treatment notes and plaintiff's testimony and other record evidence. Dr. Renner reported that plaintiff had

8

> recurrent severe panic attacks at least once a week (Tr. 619), but plaintiff testified that she has never had a panic attack. (Tr. 50). Dr. Renner's observations and opinions regarding plaintiff's severe depression and chronic stress are also undermined by plaintiff's rejection of counseling services intended to help her reduce her depression and stress. (Tr. 513). In addition, Dr. Renner noted that plaintiff had no substance abuse issues (Tr. 428), but the record demonstrates that in January 2007 plaintiff was dependant on marijuana and opioids. (Tr. 453). Further, in November 2006, Dr. Reyes found that plaintiff was not depressed, well-kempt, and had no impairments to her cognitive function (Tr. 417), but one month later Dr. Renner opined that plaintiff's depression and psychological impairments were so severe she was unable to work. (Tr. 426-27). Also, as noted by the ALJ, Dr. Renner's opinion is contradicted by the opinion of the non-examining state agency psychologist, Dr. Meyer, who opined that plaintiff had no more than moderate difficulties in maintaining social functioning and concentration, persistence or pace (Tr. 444) and the opinion of the consultative examiner, Dr. Chiappone, who opined that plaintiff had no marked restrictions and could adequately function despite her psychological condition. (Tr. 260-61).

(Doc. 22, 21–23.) As this analysis makes apparent, the consideration of Dr. Renner's April 27, 2007, treatment notes was one small piece in a much larger analysis—one sentence to be exact. (Doc. 22, 21.) Removing that one sentence does nothing to change the overall conclusion. Accordingly, Plaintiff's arguments here have no bearing on the Report's overall conclusion regarding the issue of the inconsistency of Dr. Renner's opinions and the record evidence. To this extent, Plaintiff's objection is OVERRULED.

### 2. Plaintiff's Ability to Manage Money

Plaintiff next points out that the Report and the ALJ both noted inconsistencies with Dr. Renner's statements concerning Plaintiff's ability to pay bills and manage money. Specifically, Dr. Renner opined that Plaintiff had marked difficulties with

9

activities such as paying bills but also opined that Plaintiff was capable of managing her own benefits. (Doc. 23, 3.) Plaintiff argues that Dr. Renner was asked whether Plaintiff "had marked or extreme difficulties, *either continuously or intermittently*, with respect to completing various activities of daily living," and that "[i]t is not inconsistent for a treatment provider to state that an individual has intermittent difficulty paying bills but is still capable of managing their own benefits." (Doc. 23, 3.) But again, even if Plaintiff is correct here—even if there is no inconsistency in the record with this one point—this is nevertheless just one small point within a much larger analysis. (*See* Doc. 22, 21–23.) Taking out the one sentence in the Report relating to Plaintiff's ability to manage money does nothing to change the Report's conclusion. In other words, even if there is no inconsistency regarding Plaintiff's daily activity of paying bills and managing money, there are many other inconsistencies between Dr. Renner's opinions and other record evidence. Plaintiff cannot overcome all of Dr. Renner's inconsistencies by making arguments about just a few of them. To this extent, Plaintiff's objection is OVERRULED.

### 3. Dr. Renner's Opinions about Work Absences

Plaintiff finally argues that based on Dr. Renner's opinions about the correlation between Plaintiff's physical and mental impairments, if Plaintiff were to work forty hours a week, her physical symptoms would logically increase due to increased physical activity without the option of taking breaks at her own pace. Accordingly, "[h]er symptoms of depression would likewise increase as a result, and absenteeism would follow. The degree of absenteeism would preclude competitive employment." (Doc. 23, 4.) Plaintiff maintains that the ALJ and Report therefore err where they failed to adopt

Dr. Renner's opinion concerning the number of work absences Plaintiff would have, thereby crediting the vocational expert's testimony that if Dr. Renner's opined limitations were correct, Plaintiff would be unable to secure employment. (Doc. 23, 4.)

Plaintiff is speculating here based on the assumption that Dr. Renner's opinions are controlling. But because Dr. Renner's opinions are invalid—because, as the ALJ and the Report concluded (Doc. 22, 23; Tr. 21), Dr. Renner's opinions are inconsistent with the record evidence—any reasoning based on those opinions is also invalid. Thus, because Dr. Renner's opinions are invalid, any vocational expert testimony based on those opinions is invalid as well. As a result, the ALJ did not err by failing to adopt Dr. Renner's opinions concerning the number of work absences Plaintiff would have because of her impairments and treatment. To this extent, Plaintiff's objection is OVERRULED.

### III.   Conclusion

Upon de novo review, the Court **OVERRULES** Plaintiff's Objection, (Doc. 23) and the Report (Doc. 22) is **ADOPTED** in full. As the Report recommends, (Doc. 22, 40) Defendant's decision to deny Plaintiff's application for disability insurance benefits is **AFFIRMED** as supported by substantial evidence. Accordingly, this matter is **CLOSED**.

**IT IS SO ORDERED**.

*s/Michael R. Barrett*
United States District Judge